IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ALFREDO VEGA,

                Plaintiff,

v.                                                  OPINION and ORDER

LIEUTENANT ANDERSON and                             18-cv-678-jdp
LINDA ALSUM-O'DONOVAN,

                Defendants.

---

Plaintiff Alfredo Vega, appearing pro se, is an inmate at Green Bay Correctional Institution. In 2011, when Vega was incarcerated at Columbia Correctional Institution, he started a fire in his cell. After the fire was extinguished with the help of the Portage Fire Department, prison officials threw out his property, saying that the property was damaged and dangerous as a result of the fire.

But Vega contends that his property was not so damaged that needed to be discarded. He brings a claim under the Fourteenth Amendment, contending that he was entitled to due process before the property was discarded. He also brings claims under the First Amendment, contending that defendants disposed of his property to retaliate against him for filing lawsuits, and that their actions blocked his access to the courts.

Defendants have filed a motion for summary judgment, Dkt. 28, which I will grant because defendants did not violate Vega's constitutional rights even if the lost property was not damaged.

PRELIMINARY MATTERS

I begin with a series of preliminary motions by Vega.

Vega has filed two motions asking for the case to proceed directly to trial. Dkt. 61 and Dkt. 62. He seems to assume that I have already denied summary judgment because the court set a trial date. But it is this court's practice to set trial dates at the outset of all of its cases. I have not previously ruled on defendants' summary judgment motion; I'll do that in this opinion. I'll deny Vega's motion to proceed to trial.

Vega has also submitted three motions asking for the court to conduct a demonstration. Dkt. 49; Dkt. 60; Dkt. 64. With each motion he attaches a piece of brown fabric that he says is from a state-issued pillowcase. He says that this is the same fabric as the pillowcase that he used at CCI to wrap some of his papers to protect them from the fire. Because the parties dispute whether his property was damaged by water used to put the fire out, he requests that I wet the brown cloth and compare the color of the wet cloth to the color of the pillowcase as it appears in photographs to determine whether the pillowcase in the photos was actually wet.

I'll deny Vega's motions for a few reasons. He didn't authenticate the pieces of cloth, so I cannot consider them as evidence at summary judgment, and he also filed them after the close of summary judgment briefing, so they are too late. In any event, it would be improper for the court to create evidence for either party by conducting its own demonstration. And as I will discuss in the opinion below, it ultimately doesn't matter whether Vega's materials were actually damaged by water before they were thrown away. Either way, I conclude that Vega's constitutional rights were not violated, and summary judgment for defendants is warranted.

UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.

Plaintiff Alfredo Vega is currently incarcerated at Green Bay Correctional Institution. But the events at issue in this case took place while he was incarcerated at Columbia Correctional Institution (CCI). Defendant Linda Alsum-O'Donovan is an institution complaint examiner and litigation coordinator at CCI. Defendant Theodore Anderson is a lieutenant.

In early April 2011, Vega received word that his mother had passed away. Vega says that in response to this news and perceived mistreatment by prison staff, he wanted to commit suicide. On April 11 at about 10:00 p.m., Vega gathered various fabrics and publications, stuck a pencil in an electrical outlet, and started a fire. Vega says that before starting the fire, he had attempted to wrap some of his property in plastic bags and a pillowcase and set it underneath his mattress to keep it safe so that it could be shipped to his family after his death.

Much of what happened over the next two and one-half hours was recorded by a video-only camera in the hallway outside Vega's cell. Dkt. 33-5. Smoke detectors went off and Officer Habeck was the first officer to respond to the fire. Habeck could not see Vega because of thick smoke, but he made verbal contact with him. More officers responded. They sprayed a fire extinguisher through the trap door until it ran out. Habeck used a second fire extinguisher to finish putting out the fire. Vega was taken from the cell and was escorted to the Health Services Unit to be evaluated. Staff called the Portage Fire Department and evacuated the rest of the inmates residing in the tier because of the smoke.

While waiting for the fire department, defendant Anderson and two other staff members went to the tier. They saw that there were still smoldering pieces of debris in Vega's

3

cell. They deployed the fire hose from the hose closet next to Vega's cell. One officer tried to use the fire hose to extinguish the smoldering pieces of debris. But the smoke billowing out of the cell made it unsafe to continue in that effort, so staff waited for the fire department. The hallway video shows that an officer used the fire hose to spray water into the cell for about ten seconds. Dkt. 33-5, at 25:20.

The Portage Fire Department arrived on the scene around 10:30 p.m. and two firefighters were escorted to Vega's cell. The firefighters used the fire hose on the smoldering pile of clothes and paper until all the flames and embers were extinguished. In his opposition, Vega attempts to dispute that the firefighters used the fire hose, saying that photos of the cell don't show large puddles of water on the cell floor.[1] But there was standing water in the hallway, the firefighters' incident report says that they used the hose, *see* Dkt. 34-1, at 2, and the video footage shows a firefighter entering the cell with the hose. Dkt. 33-5, at 36:21. Vega filed a sur-reply, Dkt. 47, in which he concedes that the hose was used but he continues to maintain that his property did not get soaked by the hose. I'll accept the sur-reply because it usefully clarifies Vega's position.

An incident report from Sergeant Carl states that defendant Anderson told an officer to "remove all partially burned materials and smoke damaged state property (mattress, pillow and an office garbage can) out of the institution to the dumpsters." Dkt. 40-9, at 2.

---

[1] Three sets of photo or video documentation show the interior of Vega's cell after the fire: photos taken by firefighters and attached to their report, Dkt. 34-1, video footage of the cell taken by a correctional officer, Dkt. 32-3, and photos taken by an officer. The docket contains more than one copy of the officer's photos, but the clearest version is located at Dkt. 32-2. Those photos are dated the day after the fire but I take defendants to be saying that they were taken overnight before the hallway and cell were cleaned.

The morning after the fire, defendant Alsum-O'Donovan was approached by property department staff who wanted to know what to do with the rest of Vega's property taken from his cell. Alsum-O'Donovan doesn't give the names of these staffers. Vega says that it must have been Carl or Anderson because they had been involved with the incident report and disposing the materials that had been burned. But Anderson says that neither Carl nor Anderson are property staff.

Property staff were concerned that Vega's property was dangerous, and they sought Alsum-O'Donovan's opinion as the institution complaint examiner. Alsum-O'Donovan went to the property room where property staff had laid out Vega's property on tables. Alsum-O'Donovan says that the property was waterlogged, full of soot and chemicals, and smelled bad; she found it physically uncomfortable to be in the room with the property because of the fumes emitted by the property. She says that some of the property was so soaking wet that water was running off the table it was sitting on, water could be seen inside the clear electronics, there was residue of ash, soot, or fire-extinguisher chemicals on the outside of the electronics, and that "all of the paperwork and publications were saturated with smoke and water." Dkt. 33, ¶ 6. Alsum-O'Donovan took photos of the property the morning after the fire. Vega says those photos dispute Alsum-O'Donovan's description of the damage done to those materials.[2]

Alsum-O'Donovan decided that the property should be immediately thrown away because she considered it to be hazardous to the health of staff and none of it was salvageable. She was concerned about the smoky fumes coming from the property and mold and mildew

---

[2] The clearest version of those photos is located at Dkt. 33-1.

that might form from the soaking wet papers. Defendants produce a property receipt showing this decision, although Vega says that he did not receive that receipt until after filing this lawsuit.

Under DAI Policy 309.20.03 ("Inmate Personal Property and Clothing") and 306.00.16 ("Contraband"), prison staff usually retains property that has been confiscated from an inmate, either to give the inmate a chance to tell them how to dispose of it or send it out of the prison, or to hold it while disciplinary proceedings are pending. But for materials causing a health, sanitation, or safety risk, such as "fecal matter, open food, [and] intoxicants," staff may photograph and dispose of those materials immediately. *See* Dkt. 33-6, at 3.

Defendants say that defendant Anderson and Vega did not discuss the fire or destruction of his property at all. But Vega says they did. According to Vega, the day after the fire, Anderson told him that his property had to be disposed of. Vega wrote to the warden for copies of the photos of his property. Vega says that he and Anderson talked again a couple of days later. Vega told Anderson that the photos didn't seem to show that his property had been damaged. Anderson then said that the property had been damaged by water from the fire hose. When Vega showed Anderson the photos and told Anderson that it didn't look like the property had been damaged by water, Anderson replied, "Well this should teach you not to file any complaint against any of us at Portage." Dkt. 1, at 3.[3]

Vega filed an inmate grievance about the disposal of his property, saying that he should have been given a chance to send it home instead. That grievance was denied, with the

---

[3] Vega provides slightly different versions of this conversation in his proposed findings and in his verified complaint. His proposed findings cite his declaration, Dkt. 40, but the declaration does not include an account of the conversation. So in this opinion, I use the version of the conversation from his verified complaint. The differences in the two versions are immaterial.

complaint examiner concluding from the photos that much of his property had been damaged by fire, water, or fire extinguishers.

## ANALYSIS

Vega brings a First Amendment retaliation claim against defendant Anderson and First Amendment access-to-the-courts claims and Fourteenth Amendment due process claims against both defendants Anderson and Alsum-O'Donovan.

**A. Retaliation**

To establish a First Amendment retaliation claim, a plaintiff must show that: (1) he engaged in activity protected by the First Amendment; (2) defendants took actions that would deter a person of "ordinary firmness" from engaging in the protected activity; and (3) the First Amendment activity was at least a "motivating factor" in defendants' decision to take those actions. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

Vega contends that Anderson retaliated against him for prior lawsuits he had filed against CCI staff. Filing lawsuits is protected First Amendment conduct, so he has met that element. I'll also assume that the unfair destruction of his property could deter a person of ordinary firmness from filing future lawsuits.

Defendants argue that those lawsuits were not against Anderson and that Anderson did not have specific knowledge about the lawsuits. But Vega says that Anderson explicitly told him "well this should teach you not to file any complaint against any of us at Portage," which, if believed by the jury, would show that Anderson was indeed aware of the lawsuits. The question in a retaliation claim is simply whether the protected First Amendment conduct was

a motivating factor for taking an adverse action against the plaintiff; there is no requirement that the defendant be a target of the protected speech. Dkt. 40.

But Vega's retaliation claim fails anyway. Anderson is the only defendant for this claim, and there is no evidence linking him to the destruction of the personal property that Vega contends was undamaged. Anderson was involved in having the burnt property and the smoke-damaged state-owned equipment destroyed, but Vega's claims aren't about those items. Anderson's comment about teaching Vega for filing a complaint raises the inference that Anderson thought that Alsum-O'Donovan destroyed his property in retaliation for his lawsuits. But Alsum-O'Donovan is not the defendant on this claim; Anderson is. Vega provides no evidence to support his argument that Alsum-O'Donovan, Anderson, and Carl acted "in cahoots" to destroy his property.

Alsum-O'Donovan says that she alone decided to have Vega's personal property destroyed, after consulting with unnamed property staff. Vega tries to dispute this by saying that because Alsum-O'Donovan didn't name who those property staffers are, she must have meant that she talked to either Anderson or Carl, who had already destroyed burnt property and state-owned equipment at Anderson's request. But he has no evidence supporting his belief that Anderson or Carl were property officers, and defendants deny that they were. Vega's speculation about Anderson's or Carl's job duties is not evidence. *See, e.g., Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014) (While nonmovant "is entitled . . . to all reasonable inferences in her favor, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." (citation omitted)).

Because Vega fails to present evidence that could lead a reasonable jury to conclude that Anderson was personally involved in a retaliatory destruction of the property, I will grant defendants summary judgment on this claim.

## B. Due process

Vega alleges that defendants destroyed his property for false reasons without giving him a chance to challenge that determination, even though there was a process for doing so. A procedural due process violation occurs under the Fourteenth Amendment when a state actor deprives an individual of a constitutionally protected interest in "life, liberty, or property" without providing adequate process. To establish a Fourteenth Amendment due process claim about the deprivation of a property interest, a plaintiff must show that (1) he had a constitutionally protected property interest; (2) he was deprived of that interest; and (3) the deprivation occurred without due process of law. *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 943–44 (7th Cir. 2010).

It's undisputed that Vega was deprived of his property; his materials were indeed discarded. The parties dispute whether this means he was deprived of a constitutionally protected property right. Defendants contend that Vega lost any property interest in those materials once they became damaged to the point of being hazardous.

Alsum-O'Donovan says that she found it physically uncomfortable to be in the room with the property because of the fumes coming from the property, that there was ash, soot, or fire-extinguisher chemicals on some of the property, and that all of the printed or written materials were "saturated with smoke and water." She says that she ordered the items to be thrown away as contraband posing a health or security concern, and DAI Policies 309.20.03 and 306.00.16 appear to allow prison staff to immediate discard hazardous materials such as

"fecal matter, open food, [and] intoxicants." Staff makes a record by photographing the materials, but the prisoner does not first have a hearing or a chance to direct the material somewhere outside the prison.

If Vega's materials were indeed badly damaged by the fire, that would be the end of matter, because defendants would be entitled to qualified immunity. "[T]he due process rights of prisoners are not absolute, but must be accommodated to the legitimate security needs of a corrections institution." *Caldwell v. Miller*, 790 F.2d 589, 609 (7th Cir. 1986). Vega has not provided any authority, and I am aware of none, clearly establishing that inmates retain a property interest in hazardous materials like water- and smoke-damaged items. And even if he retained a property interest in those materials, Vega hasn't provided any authority suggesting that he would be entitled to any kind of predeprivation process before prison officials disposed of those hazardous materials. Summary judgment to defendants would be required under the doctrine of qualified immunity. *See D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018) (Government officials entitled to qualified immunity from personal liability in lawsuit unless conduct violated federal statutory or constitutional right and unlawfulness of conduct was "clearly established at the time.").

But Vega argues that Alsum-O'Donovan is lying about the condition of his materials. He says that the video and photographic evidence show that his property was not burned, soaked by water, or stained by ash or soot. In particular, he says that this evidence shows that prison staff and firefighters didn't douse his property with water because his materials and the floor of his cell do not appear to be wet.

Vega is correct that the video of the cell interior, the CCI staff photos, and the firefighters' photos do not show the floor of the cell to be covered in water, although it is

10

covered in ash and soot. The photos of his property do not appear to show those materials covered in ash or sopping wet. But the photos are inconclusive: they were not taken close enough to the property and are not clear enough to tell for sure what condition those materials are in. Vega does not raise a genuine dispute regarding Alsum-O'Donovan's statements that it was difficult to be in the room with the materials because of the fumes wafting from the property.[4]

But these claims don't hinge on whether the materials were indeed damaged as Alsum-O'Donovan says. Even if Vega's property was intact and Alsum-O'Donovan violated DOC regulations by destroying the materials, Vega can't succeed on a due process claim. So there is no need for a trial to resolve the dispute about the condition of Vega's property.

Courts have consistently held that due process claims for deprivation of an arrestee's or prisoner's property fail where the plaintiff has adequate postdeprivation remedies. *See, e.g.*, *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (intentional "random and unauthorized" destruction of inmate's property did not support due process claim where postdeprivation remedies available); *Davenport v. Giliberto*, 566 Fed. Appx. 525, 529 (7th Cir. 2014) (negligent loss of arrestee property did not offend due process, and would not even if intentional, because state-law claim for conversion was available); *Munson v. Gaetz*, 673 F.3d 630, 638 (7th Cir. 2012) (inmate "received all the process he was due in the form of a written notice explaining why he couldn't possess the books and a meaningful chance to be heard" in his grievance

---

[4] Vega argues that O'Donovan's declaration testimony about her discomfort with the fumes from the damaged property is false because she did not tell the grievance examiner that or include that in her answer or interrogatories. But O'Donovan is free to tell the full story of her firsthand account in her declaration. None of Vega's interrogatories ask O'Donovan a question to which her testimony about fumes would have been an appropriate answer. *See* Dkt. 40-12.

proceedings); *Tyler v. Wick*, No. 14-cv-68-jdp, 2016 WL 5496631, at *6 (W.D. Wis. Sept. 29, 2016) (civil detainee had adequate postdeprivation remedies to challenge loss of property and money), *aff'd*, 680 F. App'x 484 (7th Cir. 2017).

Vega had, and indeed used, the administrative grievance process. And he had other meaningful postdeprivation remedies available. *See Tyler*, No. 14-cv-68-jdp, 2016 WL 5496631, at *6 (discussing Wisconsin causes of action for conversion or damages from injury to property); *see also Hamlin v. Vaudenberg*, 95 F.3d 580, 585 (7th Cir. 1996) (inmate complaint review system, certiorari review under Wisconsin law, and Wisconsin tort remedies against prison officials are adequate remedies for deprivation of good-time credits). Because he could have been compensated for his property afterward, the loss of Vega's property, even if it had been undamaged, does not give rise to a due process claim under the Constitution.

I will grant defendants' motion for summary judgment on Vega's due process claims.

**C. Access to the courts**

Vega alleges that because his legal papers were among the lost property, he was unable to file an appeal or postconviction motion that he had been planning to file concerning a 1993 conviction. Prisoners have a constitutional right to "meaningful access to the courts" to pursue postconviction remedies and to challenge the conditions of their confinement. *Bounds v. Smith*, 430 U.S. 817, 821–22 (1977); *Lehn v. Holmes*, 364 F.3d 862, 865–66 (7th Cir. 2004). To succeed on such a claim, a plaintiff must show that the defendants' interference caused an "actual injury," which means that it must have caused the plaintiff to lose a meritorious claim or the chance to seek particular relief. *Christopher v. Harbury*, 536 U.S. 403, 414 (2002); *Lewis v. Casey*, 518 U.S. 343, 346–348 (1996).

But Vega's claim fails because this court cannot grant an access-to-the-courts claim that would necessarily imply the invalidity of his underlying conviction. In *Heck v. Humphrey*, 512 U.S. 486, 487 (1994), the Supreme Court held that a prisoner is barred from pursuing a § 1983 claim when a "judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." Cases since then had expanded the reach of *Heck* to include access-to-the-courts claims about challenges to the plaintiff's conviction. *See, e.g.*, *Hoard v. Reddy*, 175 F.3d 531, 534 (7th Cir. 1999) ("where the prisoner is complaining about being hindered in his efforts to get his conviction set aside, the hindrance is of no consequence if the conviction is valid, and so he cannot get damages until the conviction is invalidated."). Because Vega has not yet obtained a favorable termination of his conviction, he can't sue defendants for money damages for impeding his right of access to the courts. I will grant defendants' motion for summary judgment on this claim.

ORDER

IT IS ORDERED that:

1. Plaintiff Alfredo Vega's motions to proceed to trial, Dkt. 61 and Dkt. 62, and his motions for court demonstration, Dkt. 49; Dkt. 60; Dkt. 64, are DENIED.

2. Defendants' motion for summary judgment, Dkt. 28, is GRANTED.

3. The clerk of court is directed to enter judgment for defendants and close this case.

Entered September 24, 2020.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

13